**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

LARRY V. LeMASTERS               :

       Plaintiff,               :
                          Case No. 3:07CV00224

 vs.               :

                         District Judge Walter H. Rice

MICHAEL J. ASTRUE,               :   Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,               :

       Defendant.               :

---

## REPORT AND RECOMMENDATIONS[1]

---

## I.    INTRODUCTION

    Plaintiff Larry V. LeMasters suffers various health problems involving his neck, back and hands. Specifically, he has undergone two cervical diskectomies and a cervical fusion, suffers from a herniated disk, and had carpal tunnel surgery. In December 2001, these problems began to interfere with his ability to work. (Tr. 274, 348). He then sought financial assistance from the Social Security Administration by applying for Disability Insurance Benefits ["DIB"] on December 16, 2003.

    After various administrative proceedings, including a hearing held on July 22, 2006 (*see* Tr. 339-370), Administrative Law Judge ["ALJ"] Thaddeus J. Armstead, Sr.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

1

denied Plaintiff's 2003 DIB application based on his conclusion that Plaintiff's impairment did not constitute a "disability" within the meaning of the Social Security Act. (Tr. 22). The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. § 405(g), which Plaintiff now is due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the Commissioner's Response to Plaintiff's Motion for Remand (Doc. #15), the administrative record, and the record as a whole.[2]

Invoking Sentence 4 of 42 U.S.C. § 405(g), Plaintiff seeks an Order reversing the ALJ's decision and granting her benefits, or, at a minimum, a remand of this case to the Social Security Administration to correct certain alleged errors. Plaintiff alternatively seeks a remand under Sentence 6 of 42 U.S.C. § 405(g) for administrative consideration of certain new and material evidence.

The Commissioner opposes each type of remand and contends that an Order affirming the ALJ's decision is warranted.

## II.    ADDITIONAL BACKGROUND

On the date of the ALJ's decision, Plaintiff's age (60) placed him in the

---

[2]The Court previously ruled on Defendant's Motion to Strike a portion of Plaintiff's Reply to Defendant's Memorandum in Opposition (Doc. #12), or alternatively to construe Plaintiff's Reply as a Motion to Remand under Sentence 6. *See* Doc. #14, denying the former and granting the latter motion.

category of a person "closely approaching retirement age " for purposes of resolving his DIB application. *See* 20 C.F.R. § 404.1563(e). (Doc. # 10 at 2). On his application for DIB, Plaintiff states that he completed the 11th grade (Tr. 63), but at the hearing, he testified that he completed the eighth grade. (Tr. 346). He told Dr. Schultz, an examining physician, that he completed the seventh grade. (Tr. 215). (Tr. 19). He has the equivalent of a limited education. *See* 20 C.F.R. § 404.1564(b)(3). Plaintiff had worked in a factory as a cover calendar man and a mill operator. (Tr. 58, 69-71).

During the administrative hearing, Plaintiff testified that he had carpel tunnel release surgeries on both hands in 2001. (Tr. 347-48). He had the right hand done first, then the left, but his right thumb locked up and he had a third surgery for trigger thumb. After he was released to go back to work, he never got back complete use of his hands, and other people helped him do his job. (*Id.*). He decided to retire in December 2001. (Tr. 348). "I just couldn't do it no more." (Tr. 349).

After Plaintiff stopped working, his neck problems became more severe, leading to surgery in December 2002. (Tr. 350). He had another surgery on his neck in December 2005. (*Id.*) After this surgery he attended therapy for a "couple of weeks," but stopped going due to the expense of driving to Columbus every day. (Tr. 357) Plaintiff further testified that after his first neck surgery in 2002, the pain never completely went away.

Plaintiff described a herniated disk in the lower part of his back, on which Dr. Fulton had requested that Plaintiff let him perform surgery. (Tr. 351-52). At the time of the hearing, he had not had any surgery on his lower back.

3

In response to questioning regarding his hands, Plaintiff stated that they sometimes draw apart, "just like someone is pulling on them."  (Tr. 352).  He cannot oppose his pinky or second finger.  (Tr. 353).

Plaintiff further testified that his former job as a mill operator involved lifting and throwing 40-60 pound slabs into a steel mill.  (*Id.*).  He averaged between six and six and a half hours per day on his feet.  (*Id.*)  His other job in the factory, the inspection job, involved lifting over 50 pounds and heaving cutting.  (Tr. 354).

On a daily basis, he has the most problems with his hands, which lock up or draw away.  (Tr. 355).   He testified that he is treated by Dr. Paul Andorfer, a pain management specialist, for his hands.  (Tr. 358).   Dr. Andorfer has tried pain medication and injections.  (Tr. 359).  Plaintiff testified that Dr. Barker has said Plaintiff has irreversible nerve and tendon damage, and that he is awaiting approval from the Bureau of Workers' Compensation ["BWC"] to see a hand specialist.  (Tr. 360).

Regarding his neck, Plaintiff said that if he turns the wrong way or does something physically the wrong way, he will feel a sharp pain.  (*Id.*).  He used to work on cars, but now hires out all work.  (*Id.*).  Regarding his low back, Plaintiff testified that he cannot lift, and that it hurts when he sits or first gets up from a seated position.  He continued, "the lower part of the center of my back comes into my left testicle, real sharp pains." (Tr. 356).  He tried seeing a chiropractor, but has not treated with one since 2002. (*Id.*)

Turning to other evidence, the parties have provided detailed and informative

descriptions of Plaintiff's medical records and other pertinent evidence. (*See* Doc. #7 at 3-11; Doc. #10 at 2-7). In light of this, and upon consideration of the complete administrative record, there is no need to fully reiterate or expand the parties' descriptions. Still, describing a few medical source opinions will help frame further review.

Plaintiff relies primarily on the opinions of his treating physicians, Drs. Adams, Andorfer and Jordan. Dr. Theodore Jordan was Plaintiff's primary care physician from October 2002 through March 2004. (Tr. 206-13). In March 2003, Dr. Jordan opined that Plaintiff could frequently lift or carry five pounds and occasionally lift or carry 10 pounds. Plaintiff could sit for two hours in an eight hour day, could stand or walk for two hours in an eight hour day, could sit for 60 minutes before needing to stand, could stand for 60 minutes before needing to sit, and would have to walk every 60 minutes for five minutes at a time. Plaintiff could never reach (including overhead), push or pull. (Tr. 209-11).

In June 2004, Dr. Jordan indicated that he last treated Plaintiff in March 2004. He diagnosed post-herpetic neuralgia, left C3-4 cervical disk herniation, left shoulder impingement syndrome, degenerative disease of the lumbar spine, degenerative joint disease of the right knee and controlled hypertension. He stated that Plaintiff had chronic left neck and shoulder pain, in addition to decreased grip strength in his left hand. Dr. Jordan opined that Plaintiff's left arm weakness prevented any lifting over five to 10 pounds, or pushing and pulling with his left arm. He noted that Plaintiff's gait was

5

unsteady due to lumbar stiffness and chronic flexion. Plaintiff would have to change positions frequently when sitting. Dr. Jordan concluded that Plaintiff was in constant pain. (Tr. 206-08).

Dr. John E. Adams, II, saw Plaintiff in July 2005 for multiple problems. Upon physical examination, Dr. Adams noted that Plaintiff's cervical flexion was 20 degrees, side bending was 10 degrees, and rotation was 45 degrees. The right elbow was tender and carpal tunnel syndrome tap sign was positive, with tenderness in the hands. Lumbar flexion was 45 degrees, but Plaintiff stood at 10 degrees and was not able to stand in a steady fashion on either the right or left leg by itself, or up on his toes. Dr. Adams stated that Plaintiff was clearly disabled. (Tr. 237). Also in July 2005, Dr. Adams completed a Physical Capacity Evaluation form. (Tr. 235-36). Dr. Adams noted that the maximum amount of weight Plaintiff could lift and carry varied from day to day but was minimal. Plaintiff could stand or walk for less than 30 minutes in an eight hour day, and could sit for less than two hours. Plaintiff would have to change positions frequently. (*Id.*) Plaintiff could sit for 20-30 minutes before needing to stand, stand for 10 minutes before needing to sit, and would have to change positions every 10-15 minutes. Plaintiff would need to use an assistive device to walk and balance, could occasionally reach with his right hand, and pushing or pulling was limited to an occasional basis, due to his elbow tendonitis. (*Id.*).

Dr. Paul E. Andorfer, a pain management specialist, is Plaintiff's attending physician for his BWC claim. On March 9, 2004, Dr. Andorfer reported that Plaintiff's

6

EMG studies suggested that his cervical condition was a predominate pain generator. (Tr. 245). On July 13, 2005, Dr. Andorfer completed a Physical Capacity Evaluation form. (Tr. 238-39). He opined that Plaintiff could frequently lift or carry five pounds and occasionally lift or carry 10 pounds. Plaintiff could stand or walk for less than two hours in an eight hour day; sit for four hours in an eight hour day, periodically alternating positions; sit for 20-30 minutes before needing to stand; stand for 15-20 minutes before needing to sit; and would need to walk every 15-30 minutes for five to 10 minutes. Plaintiff occasionally could reach (including overhead) and could never push or pull. (*Id.*) Dr. Andorfer supported these limitations with the results from MRIs of Plaintiff's lumbar and cervical spine. (Tr. 238). Dr. Andorfer also indicated that Plaintiff had constant lower back and groin pain. (Tr. 239). He noted Plaintiff's weakness of grip precluded repetitious work with hands and sustained gripping.

In a March 30, 2006 letter to Plaintiff's counsel regarding his BWC claim, Dr. Andorfer indicated that although he treated Plaintiff's hand pain, some of Plaintiff's symptoms were related to pain problems arising from conditions in the neck. (Tr. 309).

The Commissioner relies on the opinion of Dr. Padamadan, a onetime examiner for the Ohio Bureau of Disability Determinations. (Tr. 130-33). Dr. Padamadan diagnosed Plaintiff with left shoulder pain on abduction and flexion compatible with rotator cuff disease, status post neck fusion with limitation of extension, and status post bilateral carpal tunnel syndrome repair without functional impairment. He opined that Plaintiff could sit, stand, and walk, and that Plaintiff's upper extremity functions for

7

reaching, handling, and fine and gross movements with the right hand were normal.

Plaintiff's left upper extremity was limited for abduction and flexion beyond 90 degrees.

(*Id.*)  Dr. Padamadan further opined that Plaintiff might have difficulty with reaching

overhead or pulling or pushing any boxes from above the shoulder level.  He indicated

that Plaintiff's neck fusion also might prevent him from reaching and getting objects from

above the head level.  (*Id.*).

In seeking remand, Plaintiff relies on the opinion of Dr. Nancy Renneker, a copy

of which is attached to Plaintiff's Reply to Defendant's Memorandum in Opposition.

(Doc # 11).  Plaintiff summarized Dr. Renneker's opinion as follows:

> In this case, on September 17, 2007, Dr. Nancy Renneker
> examined Mr. LeMasters.  Her physical examination showed
> that Mr. LeMasters had decreased range of motion,
> tenderness, and pain.  It was Dr. Renneker's opinion that Mr.
> LeMasters could not perform overhead work and could not
> stoop, kneel, crawl, and climb ladders or stairs.  He could not
> repetitively use either hand for any task, could not push or
> pull with either wrist/hand, and was unable to manipulate
> small items in either hand.  When working with his hands,
> Mr. LeMasters would have to be able to see his hands due to
> numbness throughout both hands.  He would need to sit in a
> chair with arm rests to use his arms against the arm rest of the
> chair in order to rise from a seated position to standing
> posture.  Mr. LeMasters would need to use a straight cane for,
> all gait, was able to sit in a chair with arm rests for a
> maximum interval of 20-30 minutes, was able to stand for a
> maximum interval of 10-15 minutes, was able to walk a
> maximum distance of 10-20 yards on a level surface, and he
> was unable to walk on uneven surfaces, unable to walk on
> erratically moving surfaces, and unable to climb stairs.  Mr.
> LeMasters could occasionally lift from knee height to
> shoulder height with both hands an object weighing up to 5
> pounds, and he could carry this object a distance of no more

8

> than 5-10 yards.  Finally, Dr. Renneker opined that Mr.
> LeMasters was unable to do a sedentary job, and he was
> permanently and totally disabled from performing sustained
> remunerative employment.

(Doc. #11 at 12).

## III.    THE "DISABILITY" REQUIREMENT AND ADMINISTRATIVE REVIEW

The term "disability" – as defined by the Social Security Act – carries a specialized meaning of limited scope. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies.[3]  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* Tr. 13-22; *see also* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing

---

[3] Impairments also must be either expected to cause death or last twelve months or longer.  *See* 42 U.S.C. § 423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In the present case, the ALJ made a Step 1 finding that Plaintiff has not engaged in substantial gainful activity since December 18, 2002. (Tr. 14, 21). He determined at Step 2 that Plaintiff has the severe impairments of the residuals of cervical diskectomy with fusion, rotator cuff disease of the left shoulder and post carpal tunnel surgery status. (Tr. 21). The ALJ concluded at Step 3 that Plaintiff did not meet or equal the criteria of the Listings. (*Id.*).

At Step 4, the ALJ found that Plaintiff has the residual functional capacity to perform the basic exertional requirements of medium work.[4]   The ALJ described his specific findings as follows:

> The claimant is capable of performing the basic exertional requirements of medium work, as such work is defined for Social Security purposes. However, his "severe" impairments result in neck pain, left shoulder pain on abduction and flexion, and mild residuals of carpal tunnel surgery. His impairments impose the following work restrictions: no overhead reaching in any direction and only

---

[4]  The Regulations define medium  work as involving the ability to lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds..." 20 C.F.R. § 404.1567(c).

> occasional gripping, or very strong squeezing, such as the
> strength needed to forcefully hold and turn a wrench or a
> screw driver.

(Tr. 21).   The ALJ also determined at Step 4 that Plaintiff's allegations of total disability

are not supported by substantial objective medical evidence or clinical findings and

cannot be considered credible.  (*Id.*).

The above conclusions, along with the ALJ's findings throughout his sequential

evaluation, led him to conclude that Plaintiff was not under a disability and hence not

eligible for DIB.  (Tr. 13-22).

## IV.   JUDICIAL REVIEW

Judicial review determines whether substantial evidence in the administrative

record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742,

745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at

746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "more

than a scintilla of evidence but less than a preponderance . . ." *Rogers v. Comm'r. of Soc.*

*Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential, not *de novo*. *See Cruse v.*

*Comm'r of Soc. Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v.*

*Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). An ALJ's

factual findings must be upheld "as long as they are supported by substantial evidence."

*Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90). Once substantial supporting

11

evidence is found in the administrative record, courts do not consider whether they agree or disagree with the ALJ's findings or whether the administrative record contains contrary evidence. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, substantial evidence is not the analytical ending point. Judicial review further considers whether the ALJ "applied the correct legal criteria." *Bowen*, 478 F.3d at 746. If the ALJ does not, the decision may not be upheld even if the findings are supported by substantial evidence. *See id.* For example, a decision will not be upheld where the ALJ failed to apply mandatory procedural rules and standards established by the Commissioner's Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein).

## V. DISCUSSION

### A. The Parties' Contentions

Plaintiff argues in his Statement of Errors that the ALJ erred in not finding Plaintiff's lumbar degenerative disc disease to be a severe impairment. (Doc. #7 at 16). Plaintiff urges that both subjective and objective evidence compel a conclusion that such condition qualifies as a severe impairment. (Doc. #7 at 13; *see also* Doc. #7 at 26, suggesting that the ALJ should have considered "whether [Plaintiff] had a heart impairment that was 'severe' or 'non-severe'"). Plaintiff also contends that the ALJ failed to properly weigh the treating physicians' opinions. (Doc. # 7 at16-22). According

12

to Plaintiff, "[t]he ALJ simply does not make any assessment whatsoever" as to the opinions of Drs. Adams, Andorfer and Jordan.  (Doc. #7 at 20).  He next asserts that the ALJ erred with respect to the hypothetical posed to the vocational expert.  (Doc. #7 at 22-25).  Plaintiff argues that the ALJ did not give the vocational expert an opportunity to testify as to whether jobs that Plaintiff could perform exist at the light exertional level (Doc. #7 at 22-23), that the ALJ "omitted very important restrictions" from his residual functional capacity hypothetical to the vocational expert (Doc. #7 at 23-24), and that Plaintiff cannot perform the three jobs identified by the vocational expert.  (Doc. #7 at 24-25).  Finally, Plaintiff contends that the ALJ did not properly assess Plaintiff's credibility, as he focused on irrelevant perceived discrepancies in Plaintiff's testimony, but failed to consider Plaintiff's prior work record, observations of treating physicians, the use of medications, and other relevant factors.  (Doc. #7 at 25-27).

In addition to reinforcing the same claims of error (*see* Doc. #11 at 1-13), Plaintiff's reply to Defendant's opposing memorandum also proffers additional evidence that is not part of the administrative record.  (Doc. #11 at 14-26).  Plaintiff requests a remand pursuant to Sentence 6 of 42 U.S.C. § 405(g) on the basis of new material evidence.  (Doc. #11 at 12-13).  Plaintiff urges that remand for consideration of the attached opinion of Dr. Nancy Renneker is appropriate as "Dr. Renneker's opinion parallels those of Drs. Jordan, Adams, and Andorfer," and "is more evidence to support the opinions of these doctors."  (Doc. #11 at 12-13).  Plaintiff also urges the Court to consider evidence that he was granted disability benefits on a subsequent application and

13

was found to have been disabled "as of December 9, 2006, just one day after the date of

ALJ's decision in this claim.." (Doc. #11 at 13; *see* Doc. #11 at 20-26). Urging that such

determination "calls into question the ALJ's conclusions in this application," Plaintiff

requests that the Commissioner's decision be reversed and benefits awarded, or

alternatively, that the case be remanded for further hearing. (*Id.*).

     In opposing Plaintiff's stated errors, the Commissioner argues that the ALJ's

decision that Plaintiff is not disabled is supported by substantial evidence. (Doc. #10 at

9-19). He asserts that the ALJ's failure to denote Plaintiff's lumbar degenerative disc

disease a severe impairment was not reversible error as the ALJ applied the proper five-

step sequential evaluation process (Doc. #10 at 10), that the ALJ properly weighed the

treating physicians' opinions in light of other evidence and reasonably relied on Dr.

Padamadan's opinion (Doc. #10 at 11-15), that the ALJ properly assessed Plaintiff's

credibility regarding his subjective complaints of pain (Doc. #10 at 15-17), that the ALJ's

hypothetical properly incorporated the restrictions he had found (Doc. #10 at 17-19), and

that Plaintiff's purported inability to perform three "example" jobs is neither supported by

the record nor relevant. (Doc. # 10 at 19).

     In his reply to Plaintiff's motion to remand pursuant to Sentence 6, the

Commissioner urges that neither Dr. Renneker's new opinion rendered since the date of

the ALJ's and Appeals Council's decisions, nor Plaintiff's new award of disability

benefits on a subsequent application, warrants remand. (Doc. #15). He contends that

neither is material given that they do not relate to the time period relevant to Plaintiff's

current claim, and that Plaintiff also has failed to show good cause for his delay in obtaining the opinion from Dr. Renneker.

**B.      Remand under Sentence 6 of 42 U.S.C. § 405(g)**

Under Sentence 6 of 42 U.S.C. § 405(g), this Court may remand a case to the Social Security Administration "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). The provision "was enacted, at least in part, to limit the discretion of federal judges to remand for reconsideration of new evidence." *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (citations omitted). A Sentence 6 remand for consideration of additional evidence is warranted only if (1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing, and (2) the evidence is new and material. 42 U.S.C. § 405(g); *see Melkonyan*, 501 U.S. at 89; *see also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Plaintiff – the party seeking a Sentence 6 remand in the present case – bears the burden of establishing these two remand requirements. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). To be "material," new evidence (1) must be relevant to and probative of an applicant's condition prior to the Commissioner's decision, and (2) must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered. *Smith v. Comm'r of Soc. Sec.*, No. 1:07cv199, 2008 WL 2311561, at *6 (S.D.

15

Ohio June 4, 2008)(Barrett, J.)(citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)). New evidence is cumulative and not sufficient to warrant remand if it relates to an issue already fully considered by the Commissioner. *Id.* (citing *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)). Additionally, evidence that a plaintiff's health has deteriorated since the Commissioner's decision is not material to that application, and the appropriate remedy is a new application. *Id.* (citing *Sizemore*, 865 F.2d at 712).

Regarding "good cause," the Sixth Circuit "has taken a harder line" than some other circuit courts. *Oliver*, 804 F.2d at 966. In order to establish good cause in this Circuit, a plaintiff "must give a valid reason for his failure to obtain evidence prior to the hearing" for inclusion in the administrative record. *Id.* (citing *Willis*, 727 F.2d at 554). "Additional evidence generated for the purpose of attempting to prove disability in contrast to evidence produced by continued medical treatment does not meet the good cause requirement of the Act." *Powell v. Comm'r of Soc. Sec.*, No. 3:07cv074, 2008 WL 886134, at *9 (S.D. Ohio March 28, 2008) (Rice, J.) (citing *Koulizos v. Sec'y of Health & Human Servs.*, 802 F.2d 458 [table], 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986) ["The test . . . is that good cause is shown for remand if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability."]).

16

Plaintiff contends that a Sentence 6 remand is warranted due to a new report from an examining physician, Dr. Nancy Renneker (Doc. #11 at 14-19), as well as a Social Security Administration decision granting Plaintiff benefits on a subsequent application. (Doc. # 11 at 20-27). Plaintiff urges that "Dr. Renneker's opinion parallels those of Drs. Adams, Andorfer and Jordan," and "is more evidence to support the opinions of th[o]se doctors." (Doc. #11 at 12-13). He also contends that the subsequent Social Security Administration finding "that he has been disabled as of December 9, 2006 . . . calls into question the ALJ's conclusions in this application." (Doc. #11 at 13).

The Commissioner opposes a Sentence 6 remand, first denying that Dr. Renneker's opinion is "material," given that she assessed Plaintiff's condition as of September 17, 2007, and "did not suggest that her findings related back to the relevant period" of December 18, 2002 [Plaintiff's alleged onset date] to December 8, 2006 [the date of the ALJ's decision]. (Doc. #15 at 2). The Commissioner also urges that Plaintiff has not established good cause for his failure to obtain an opinion from Dr. Renneker while the administrative proceedings remained open. (Doc. #15 at 3-4). Finally, the Commissioner asserts that "[t]he mere fact that Plaintiff was found to be disabled one day after the ALJ's decision certainly does not demonstrate that Plaintiff was disabled during the preceding four years." (Doc. #15 at 3).

Dr. Renneker opines that Plaintiff "is unable to do a sedentary job and he is permanently and totally disabled from performing sustained remunerative employment." (Doc. #11 at 17). Because September 17, 2007 opinion post-dates the ALJ's decision, it

17

unquestionably is "new," and it also unquestionably relates to Plaintiff's condition. As Defendant aptly notes, however, whether Dr. Renneker's opinion is "relevant to and probative of [Plaintiff's] condition prior to the Commissioner's decision," *see Smith*, 2008 WL 2311561, at *6 (emphasis added), is somewhat suspect, given that the opinion is based upon an examination made some nine months after the ALJ rendered his decision.

Moreover, in light of the fact that Dr. Renneker's report "relates to an issue already fully considered by the Commissioner" – as Plaintiff himself acknowledges in stating that the new opinion in essence "parallels" those of the other treating physicians already on the record and  "is more evidence to support" those opinions (Doc. #11 at 12-13) – this new evidence appears to be cumulative.  Under *Smith*, 2008 WL 2311561, at *6, it would not warrant remand for that additional reason.

Finally, Plaintiff also has not satisfied the "good cause" element of the Sentence 6 remand test.  *See Melkonyan*, 501 U.S. at 89.  Issues regarding the report's timeliness notwithstanding, the principle obstacle to this Court's finding of "good cause" is not Plaintiff's delay, but rather the nature of the evidence itself.  As it appears that Dr. Renneker's opinion is not a product of Plaintiff's ongoing medical treatment, but rather was generated for the express purpose of attempting to prove disability,  this Court is constrained to find that such evidence does not meet the "good cause" requirement of the Social Security Act.  *See Powell*, 2008 WL 886134, at *9.

Plaintiff also has not established entitlement to Sentence 6 remand based upon the Social Security Administration's subsequent award of benefits, as that evidence suffers

18

from a similar affliction regarding materiality – *i.e.*, nothing of record shows how the later decision is "relevant to and probative of [Plaintiff's] condition <u>prior</u> to the Commissioner's decision" in this case.  *See Smith*, 2008 WL 2311561, at *6 (emphasis added).   Accordingly, Plaintiff's motion for remand on the basis of new material evidence must be denied.

### C. <u>Judicial Review of the ALJ's Decision</u>

Having concluded that remand is not appropriate on the basis of the new evidence proffered by Plaintiff, the Court next must consider whether the ALJ's decision withstands scrutiny under the test articulated in *Bowen*, 478 F.3d at 746.

### 1. Medical Source Opinions

Plaintiff contends that the ALJ erred by accepting the opinion of a one-time consultative examining physician, Dr. Padamadan, over the opinions of Plaintiff's treating physicians, Drs. Adams, Andorfer and Jordan. Plaintiff reasons, in part, that the ALJ failed to weigh the treating physicians' opinions as required by the Regulations.

The Commissioner maintains that the ALJ properly evaluated the medical source opinions of record and correctly found that the treating physician's opinions were unsupported by objective clinical findings and inconsistent with other substantial evidence of record.

The ALJ based his assessment of Plaintiff's residual functional capacity to perform medium work on "the consensus of treating and examining sources that the claimant has some functional restrictions which affect his ability to work."  (Tr. 17).  The ALJ rejected

19

the opinions of  Drs. Adams, Andorfer and Jordan because "these opinions are not

supported by the overall weight of the evidence and can only be viewed as an uncritical

acceptance of the claimant's subjective complaints.  Accordingly, they must be rejected."

(Tr. 18).

Essentially, this is a "pain case."  In many disability cases, the cause of the

disability is not necessarily the underlying condition itself, but rather the symptoms

associated with the condition.  *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir.

2007).  Where the symptoms and not the underlying condition form the basis of the

disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Id.*

(citations omitted).  First, the individual must establish a medically determinable

impairment which reasonably could be expected to produce the pain.  *See Jones v. Sec'y*

*of Health & Human Servs.,* 945 F.2d 1365 (6th Cir. 1991) (citing *Duncan v. Sec'y of*

*Health & Human Servs.,* 801 F.2d 847 (6th Cir. 1986)).  Second, the intensity and

persistence of the alleged pain are evaluated by considering all of the relevant evidence.

*See id.,* 945 F.2d at 1366-70.

The treating physician rule, when applicable, requires ALJs to give controlling

weight to a treating physician's opinion rather than favoring the opinion of a non-

examining medical advisor, an examining physician who saw the claimant only once, or a

medical expert who testified before the ALJ.  *Wilson v. Comm'r. of Soc. Sec.*, 378 F.3d

541, 544 (6th Cir. 2004); *see Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048,

1054 (6th Cir. 1983); *see also* 20 C.F.R. § 404.1527(d)(2), (e), (f).  A treating physician's

opinion is given controlling weight only if it is both well supported by medically

acceptable data and not inconsistent with other substantial evidence of record.  *Wilson*,

378 F.3d at 544; *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997);

*see also* 20 C.F.R. § 404.1527(d)(2).

  If a treating physician's opinion is not given controlling weight, it must be

weighed under a number of factors set forth in the Commissioner's Regulations –

"namely, the length of the treatment relationship and the frequency of examination, the

nature and extent of the treatment relationship, supportability of the opinion, consistency

of the opinion with the record as a whole, and the specialization of the treating source – in

determining what weight to give the opinion."  *Wilson*, 378 F.3d at 544 (citing 20 C.F.R.

§ 404.1527(d)(2)).

  In general, more weight is given to the opinions of examining medical sources than

to the opinions of non-examining medical sources.   *See* 20 C.F.R. § 404.1527(d)(1).

Nevertheless, the opinions of non-examining state agency medical consultants have some

value and, under some circumstances, can be given significant weight.  This occurs

because the Commissioner views non-examining sources "as highly qualified physicians

and psychologists who are experts in the evaluation of the medical issues in disability

claims under the [Social Security] Act."  Social Security Ruling 96-6p.  Their opinions,

however, are weighed under the same factors as treating physicians' opinions, including

supportability, consistency, and specialization.  *See* 20 C.F.R. § 404.1572(d), (f).

  Plaintiff's complaints of chronic and disabling pain are supported by evidence

of record, particularly the findings and opinions of his treating physicians.  Drs. Jordan and Andorfer opined that Plaintiff would be limited to sedentary work.  (Tr. 209-11 and 238-39).  Dr. Adams opined that Plaintiff was not able to work because he was severely disabled.  (Tr. 235-236).

Those treating physicians' opinions are consistent with other physician-provided evidence of record.  For example, long term treating physician Dr. Baker performed multiple surgeries on Plaintiff's hands and knees and treated Plaintiff's shoulder with injections.  (Tr. 143-87).  Plaintiff's complaints of disabling pain also have been consistent over time.  Additionally, Plaintiff testified that Dr. Fulton had requested Plaintiff to let him perform surgery.  (Tr. 351-52).

Although the ALJ declined to give these treating physicians' opinions controlling weight (*see* Tr. 18), he erred as a matter of law by not continuing to weigh Drs. Adams', Andorfer's and Jordan's opinions under the remaining factors of the Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source" – in determining what weight to give their opinions.  *Wilson*, 378 F.3d at 544. The ALJ did not specifically refer to any of these factors or to 20 C.F.R. § 404.1527(d)(3)-(5) when weighing the treating physician's opinions.  Speaking through the Rulings, the Commissioner instructs:

> Adjudicators must remember that a finding that a treating source's medical opinion is not well-supported by medically acceptable clinical and laboratory techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527. . .  In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p. Because the ALJ did not heed this instruction or the requirements of the Regulations, he did not apply the correct legal criteria to the treating physicians' opinions, and his evaluation of those opinions thus constituted an error of law.  *See Bowen*, 478 F.3d at 746.

There remains the possibility that the ALJ's errors were harmless. *See Bowen*, 478 F.3d at 747-48; *Wilson*, 378 F.3d at 546-47.  However, "[a] court cannot excuse the denial of a mandatory procedural requirement protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.  '[A] procedural error is not made harmless simply because the [aggrieved party] appears to have had little chance of success on the merits anyway.'  To hold otherwise, and to recognize substantial evidence as a defense to non-compliance . . . would afford the Commissioner the ability to violate the regulation[s] with impunity and render the protections promised therein illusory.  The general administrative law rule, after all, is for a reviewing court, in addition to whatever

substantive factual or legal review is appropriate, to 'set aside agency action . . . found to

be . . . without observance of procedure required by law.'" *Wilson*, 378 F.3d at 546

(internal citations omitted).

Additionally, the ALJ's legal error was not harmless in this case because the

record contained significant objective evidence tending to support the treating physicians'

opinions.  A May 3, 2002 x-ray of Plaintiff's right knee revealed a slight narrowing of the

medial compartment of the tibiotalar joint, consistent with a mild degree of degenerative

joint disease.  (Tr. 165).  A October 9, 2002 MRI of Plaintiff's cervical spine revealed

multi-level degenerative disk and joint disease.  (Tr. 153-154).  An October 16, 2002

nerve conduction study revealed minimal left carpal tunnel syndrome, moderate cubital

tunnel syndrome, and left C6 radiculopathy.  (Tr. 152).  An October 31, 2003 EMG and

nerve conduction study showed mild left cubital tunnel syndrome, mild right carpal tunnel

syndrome, and mild left C5-6 radiculopathy.  (Tr. 253).   A December 23, 2003 cervical

spine MRI showed multi-level moderate to severe neural foraminal narrowing, moderate

to severe central spinal stenosis at C-5-6 with bilateral severe neural foraminal narrowing

and the spinal cord moderately flattened.  (Tr. 250).  A February 26, 2004 MRI of

Plaintiff's left shoulder showed an impingement on the supraspinatus muscle.  (Tr. 145).

A June 30, 2004 lumbar sacral spine x-ray showed advanced osteoarthritis with marked

narrowing of the L5-S1 interspace. (Tr. 242).  An August 4, 2004 lumbar spine MRI

showed moderate diffuse lumbar degenerative changes with severe disc space narrowing

with a moderately bulging disc and moderate stenosis.  (Tr. 240).  An August 31, 2005

24

MRI of cervical spine revealed a herniated disc at C5-6 posteriorly and on the left.  (Tr. 318).  An October 3, 2005 CT scan of Plaintiff's cervical spine showed moderate degenerative changes with moderate disc space narrowing and anterior osteophytes.

The foregoing examples are but a few of the many objective test results which constitute substantial evidence to support the opinions of Drs. Adams, Andorfer and Jordan.  Because the record demonstrates that the ALJ did not apply the correct legal criteria in reaching his decision on Plaintiff's application, and because such legal error was not harmless in light of substantial contrary evidence in the record, further analysis of Plaintiff's remaining claimed errors is unnecessary.  *See Bowen*, 478 F.3d at 746.

### 2. Remand under Sentence 4

If the Commissioner's final decision fails to apply the correct legal standards or is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order an award of benefits. Under Sentence 4 of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan*, 501 U.S. at 99.  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

Plaintiff seeks an Order remanding this case under Sentence 4 of 42 U.S.C. § 405(g) for payment of benefits or at least for further proceedings.

An Order remanding for payment of DIB is warranted only "where proof of the disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176.  Although the administrative record contains some evidence to support the conclusion that Plaintiff is under a "disability" within the meaning of the Social Security Act, the administrative record does not contain either overwhelming evidence of a disability or strong evidence of a disability with an absence of contrary evidence.  A judicial award of benefits therefore is unwarranted.  *See id*.

Remanding this case for further consideration is warranted due to the ALJ's errors in weighing the opinions of  Drs. Adams, Andorfer and Jordan and Dr. Padamadan and because substantial evidence does not support the ALJ's rejection of Plaintiff's pain testimony.  On remand, the Commissioner and the ALJ should be directed (1) to re-evaluate the medical source opinions as required by the Commissioner's Regulations and Rulings; (2) to re-assess Plaintiff's credibility; (3) to reassess Plaintiff's residual functional capacity; and (4) to conduct the sequential analysis in light of the ALJ's credibility findings, the weight given on remand to the medical sources on remand, and Plaintiff's residual functional capacity.

Accordingly, the case must be remanded to the Commissioner and the ALJ under Sentence 4 of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations.

**IT IS THEREFORE RECOMMENDED THAT:**

1.      The Plaintiff's Motion for Remand (Doc. #11; *see* Doc. #14) under Sentence 6 of 42 U.S.C. § 405(g) be denied;

2.      The Commissioner's non-disability finding be vacated;

3.      No finding be made as to whether Plaintiff Larry V. LeMasters was under a "disability" within the meaning of the Social Security Act;

4.      This case be remanded to the Commissioner and the Administrative Law Judge under Sentence 4 of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

5.      The case be terminated on the docket of this Court.


August 11, 2008


＿＿＿＿ s/ Sharon L. Ovington ＿＿＿＿
Sharon L. Ovington
United States Magistrate Judge


27

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).